GSI COMMERCE, Appellant

v.

Michelle THOMPSON; Hon. James L. Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2012–CA–000510–WC.

Court of Appeals of Kentucky.

Sept. 28, 2012.

Scott C. Wilhoit, Louisville, KY, for appellant.

JoAnne Wheeler Bland, Elizabethtown, KY, for appellee.

Before CAPERTON, COMBS, and NICKELL, Judges.

*OPINION*

COMBS, Judge:

GSI Commerce Solutions, Inc., petitions for review of an opinion of the Workers' Compensation Board affirming the decision of the Administrative Law Judge (ALJ). The ALJ awarded benefits to Michelle Thompson for a work-related injury sustained on August 3, 2009.

Relying on the holding of *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839 (Ky. 2004), Commerce Solutions contends that the findings of the ALJ were not supported by substantial evidence. Commerce Solutions believes that the medical evidence relied upon by the Board and by the ALJ was unreliable because the medical opinions underlying Thompson's claim were based upon an incomplete and inaccurate medical history. It also argues that the Board and the ALJ erred by relying on the permanent impairment rating assessed by the university evaluator, contending that the evaluator's estimate of impairment was critically flawed. After our review, we disagree with both contentions. Therefore, we affirm.

Commerce Solutions is an internet facilitator dealing in the processing of orders for electronics, small consumer goods, and apparel. In a deposition taken May 13, 2010, Thompson testified that she was selecting product to fulfill an online customer order on August 3, 2009, when she began to feel sharp pains in the left side of her neck; her left arm and fingers began to go numb. Thompson spoke with her supervisor about the pain and was sent for a doctor's examination. As a result of the examination, Thompson was given prescriptions for pain and was taken off work. She underwent an MRI on September 22, 2009.

In October 2009, Thompson saw Dr. Thad Jackson, a neurosurgeon. Reviewing the results of the MRI, Dr. Jackson detected degenerative changes in Thompson's cervical spine that he believed were likely exacerbated by her work-related injury. Dr. Jackson ordered physical therapy.

Commerce Solutions stopped paying the costs of her medical care following an independent medical evaluation conducted by Dr. Thomas Loeb, who diagnosed pre-existing multilevel degenerative disc disease. Dr. Loeb was not convinced that Thompson suffered any new, acute injury on August 3, 2009. Instead, he attributed Thompson's pain to a previous arthritic degenerative condition. Dr. Loeb did not believe that Thompson suffered any per-

manent disability related to the alleged injury and was of the opinion that she needed no additional care.

On March 15, 2010, Thompson filed an Application for Resolution of Injury Claim. On March 26, 2010, she underwent an independent medical evaluation performed by Dr. David Changaris, a neurosurgeon.

Based upon his evaluation, Dr. Changaris assigned Thompson a 19% whole person impairment. He attributed the impairment solely to the work-related injury of August 3, 2009.

Dr. Craig Roberts, a university evaluator, also saw Thompson. He took a patient history, reviewed prior medical records, performed a physical examination, and reviewed results of the diagnostic testing. Dr. Roberts submitted both a report and a supplemental report of his findings. He was also deposed. Dr. Roberts diagnosed Thompson with left shoulder post-traumatic arthrosis. He related Thompson's complaints to the work-related injury of August 3, 2009, and he assessed a 22% whole person impairment rating.

Barbara Thompson, a nurse practitioner, was deposed on May 6, 2011. During her deposition, Nurse Thompson explained that she had seen the claimant on January 13, 2008, and had diagnosed her with right neck strain. She was seen again on June 11, 2008, for neck pain and once again a year later when she complained of neck pain "coming from her shoulder to her temple mostly on the right side." Deposition at 16. She was seen again following the August 3, 2009, injury but this time with pain related to her left side.

After analyzing the evidence, the ALJ rejected her employer's contention that Thompson's condition was unrelated to her work-related injury of August 3, 2009. The ALJ noted as follows:

The defendant-employer points out that [Thompson] treated with [a nurse practitioner] as early as January of 2008 for neck pain after pulling a cart at work.

\*    \*    \*    \*    \*    \*

[T]he undersigned notes that [Thompson's] symptoms had primarily been on the right side prior to August 3, 2009 when [her] left side became symptomatic. While [Thompson] may have had a pre-existing active condition on the right side, the Administrative Law Judge believes that August 3, 2009 incident constitutes the proximate cause of a harmful change in [Thompson] as of that date pertaining to [her] cervical condition and left sided symptoms per the credible medical testimony of Dr. Roberts, the university evaluator. His opinions in respect to [Thompson] are substantiated by Dr. Changaris. The Administrative Law Judge recognizes that Dr. Loeb has tested (sic) otherwise but KRS 342.315 requires the undersigned to give presumptive weight to the university evaluator. The burden overcomes (sic) such findings and opinions to fall upon the opponent (sic) that evidence. Herein, the undersigned does not believe that the opinions of Dr. Loeb overcome the findings of Dr. Roberts in respect to [Thompson's] compensable condition and the causal connection between her employment and her present impairment rating.

Opinion and Order at 9.

Commerce Solutions filed a petition for reconsideration, which concentrated on the opinion of Dr. Roberts. Commerce Solutions argued that the opinion of the Dr. Roberts was the product of an incomplete and inaccurate medical history and that it was, therefore, unreliable. The employer also contended that Dr. Roberts erred by assigning a 16% impairment rating attributable to the cervical spine because this

level of impairment was clearly not supported by the American Medical Association's *Guides to the Evaluation of Permanent Impairment, 5th Edition.* The ALJ denied the petition, and the Workers' Compensation Board affirmed the decision of the ALJ.

The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's proof. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky.1985). If the party with the burden of proof is successful before the ALJ, the question on appeal is whether the ALJ's opinion was supported by substantial evidence. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984). The Board is charged with deciding whether the ALJ's finding "is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Ira A. Watson Department Store v. Hamilton,* 34 S.W.3d 48 (Ky.2000); KRS 342.285. When reviewing the Board's decision, we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice. *Western Baptist Hosp. v. Kelly,* 827 S.W.2d 685 (Ky.1992).

As it did below, Commerce Solutions again relies upon *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839 (Ky.2004), to support its contention that the opinion of Dr. Roberts cannot constitute substantial evidence upon the issue of causation. Commerce Solutions argues that the opinion of Dr. Roberts is fatally flawed since it was based upon an inaccurate or incomplete medical history. It contends that the medical history obtained by Dr. Roberts did not include Thompson's prior neck injuries.

We are not persuaded that the *Cepero* decision controls the outcome of this appeal. In *Cepero,* the claimant alleged that he suffered a work-related knee injury. The ALJ awarded Cepero benefits based upon evidence from two physicians that indicated that his knee condition was related to a work injury. However, neither doctor was aware that Cepero had suffered a severe injury to his knee several years earlier. The Board reversed the ALJ's finding that the doctors' opinions were sufficient evidence upon which to base an award of benefits. The Supreme Court of Kentucky affirmed and quoted the Board's holding as follows:

> [I]n cases such as this, where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it [*sic*] being substantially inaccurate or largely incomplete, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence. Medical opinion predicated upon such erroneous or deficient information that is *completely unsupported by any other credible evidence* can never, in our view, be reasonably probable.

*Cepero,* 132 S.W.3d at 842. (Emphasis added.)

We are persuaded that the facts in *Cepero* are readily distinguishable from the facts of this matter. In *Cepero,* there was a **complete omission** of a significant and clearly relevant past injury, misleading the medical expert to find the claimant's injury to be entirely work-related. The medical expert testified that if she had known of the past injury, her opinion would have been different. Additionally, the medical opinion described in *Cepero* was completely unsupported by any other credible evidence.

In this case, there is nothing to indicate that Thompson attempted to conceal her previous neck and shoulder pain from any of the medical experts. During his deposition, Dr. Roberts explained specifically that he had been satisfied with the medical history that Thompson had given him and that he had been aware at the time that he gave his opinion that she had had some right-side neck and right shoulder pain prior to August 3, 2009. Furthermore, Dr. Roberts's opinion was not "unsupported by any other credible evidence." As the ALJ noted, the opinion of Dr. Roberts was confirmed by Dr. Changaris. Under these circumstances, the ALJ was not required to disregard Dr. Roberts's opinion. The weight to be given to it was clearly a matter for the ALJ to decide within the broad scope of his discretion.

Commerce Solutions also argues that the Board and the ALJ erred by relying on the permanent impairment rating assessed by Dr. Roberts, contending that his estimate of Thompson's impairment attributable to the cervical spine was erroneous. Commerce Solutions claims that Dr. Roberts's assignment of a 22% whole body impairment is not supported by the American Medical Association's *Guides to the Evaluation of Permanent Impairment, 5th Edition,* alleging that Thompson's physical condition did not fit the diagnostic criteria of that treatise.

The question of whether Thompson's injury fits within the diagnostic criteria set out in the AMA's *Guides* is a medical question reserved to medical experts. *Kentucky River Enterprises, Inc. v. Elkins,* 107 S.W.3d 206 (Ky.2003). Our review confirms that Dr. Roberts's assessment of Thompson's impairment rating fully comports with the range of impairment for the assigned category of injury. Although Dr. Loeb expressed a conflicting opinion, the ALJ was wholly entitled to disregard Dr. Loeb's testimony. As the Board observed, Dr. Roberts's assessment of the claimant's impairment rating was supported by the separate and independent evaluation of Dr. Changaris.

The Board did not overlook or misconstrue controlling law. Nor did it so flagrantly err in assessing the evidence that it has caused gross injustice. Therefore, we affirm the opinion of the Workers' Compensation Board.

ALL CONCUR.