RENDERED:  OCTOBER 16, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0330-WC

KENNETH TURNER                                                    APPELLANT


PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-15-94425


COMMONWEALTH OF KENTUCKY,
DEPARTMENT OF CORRECTIONS;
HONORABLE JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE:  This petition for review comes to us following especially

protracted proceedings before the Administrative Law Judge ("ALJ") and the

Workers' Compensation Board ("Board").  The ALJ rendered his original findings

and conclusions on July 23, 2018.  The claimant, Kenneth Turner, appealed to the Board which remanded for additional findings with respect to the ALJ's conclusion that Turner suffered only a temporary injury that had fully resolved.  In response, the ALJ rendered additional findings on March 8, 2019, but did not alter his ultimate conclusion that Turner suffered only a temporary injury.  Another appeal to the Board followed with the result being another remand and additional findings by the ALJ but no change in result.  Turner once again appealed to the Board.  The Board, still nonplussed with the ALJ's analysis and review of the evidence, remanded Turner's claim a third time.

Following this last remand, Turner petitioned our Court for review arguing that the Board's open-ended remand ignored his arguments, and that any remand should be issued with instructions for the ALJ to assess the evidence without regard to the opinion of Dr. Thomas O'Brien as that opinion was based on an incomplete and inaccurate medical history.  While we appreciate Turner's frustration, we cannot conclude that the Board erred as a matter of law.  While some areas of the report could affect its overall credibility, we cannot agree with Turner that the Board erred in leaving the ultimate decision in the ALJ's hands.  Therefore, we must affirm.

## I.  STATEMENT OF THE FACTS

In 2015, Turner was 58 years old and employed by the Department of Corrections as a full-time maintenance employee.  He performed most of his duties at the Kentucky State Penitentiary in Eddyville, Kentucky taking care of plumbing, electrical, and air conditioning issues.  Turner's job duties required him to lift and carry heavy items and climb ladders.

On February 16, 2015, Turner was injured during the course and scope of his employment.  Turner had been on call and had worked the night shift at the penitentiary.  Turner worked overtime until approximately 2:00 or 3:00 p.m. the next afternoon when he was sent to return a key to the yard office and go home. After returning his key, Turner attempted to walk along a sidewalk within the penitentiary.  It had been snowing all night, and there was snow and ice on the walkway.  Turner slipped and fell on the icy sidewalk, injuring his hip, shoulder, and neck and fracturing three ribs.  Turner has readily admitted that his hip injury and rib fractures have resolved, and he is no longer having any problems associated with those injuries.

The following week, on February 23, 2015, Turner visited his family practitioner, Holly McCormick, APRN, with complaints of headaches, right shoulder pain, and right-sided chest pain; but, it does not appear that Turner complained of any neck pain at this time.  Turner described his fall to Nurse

-3-

McCormick. She ordered x-rays and a CT scan. The x-rays revealed a shoulder abnormality of the clavicle and in the AC joint and broken ribs. Nurse McCormick referred Turner to an orthopedic surgeon for his shoulder condition. Turner returned to Nurse McCormick on March 4, 2015, with continued complaints of pain in his right shoulder and ribs. He did not make complaints of neck pain at this time either. Nurse McCormick referred Turner to the Trigg County Hospital Rehabilitation Department ("Trigg County") for physical therapy.

Turner first complained of right upper extremity radicular pain during his first physical therapy appointment on March 24, 2015. At a March 31, 2015 visit, Turner again complained of right upper extremity pain with headaches, and the office notes indicate cervical pathology was suspected. Turner continued his complaints on April 13, 2015. According to office notes, Turner had a positive Spurling's test for cervical radiculitis and demonstrated limited cervical range of motion.

Turner returned to Nurse McCormick again on April 6, 2015, because of his neck pain, which he reported was gradually worsening since his fall. Nurse McCormick noted that Turner reported to her that he had been having issues with neck pain since his work accident, and that it had been coming on gradually after the work accident. Nurse McCormick referred Turner to Dr. Chang after an MRI revealed pathology within Turner's shoulder, and Dr. Chang recommended Turner

-4-

visit a cervical specialist. On May 7, 2015, Nurse McCormick noted that Turner was still having difficulties with his neck and was awaiting a referral to an orthopedic specialist for the condition. On July 16, 2015, Nurse McCormick observed that the MRI of Turner's neck was abnormal and wrote that "[t]his all stems from a worker's comp claim when he fell and hit his neck, head, and shoulder area."

Turner was eventually referred to Dr. Gregory Lanford, who saw Turner for an independent medical examination ("IME") and a neurological evaluation on September 17, 2015. Dr. Lanford diagnosed right C6 radiculopathy, weakness in the right biceps, and absent right biceps jerk consistent with foraminal stenosis at C5-6 on the right. Dr. Lanford observed that Turner did not experience any of his current symptoms prior to the work injury. Dr. Lanford noted that Turner had failed conservative treatment and recommended a cervical fusion at C4-6. Dr. Lanford concluded that, without surgery, Turner would be at maximum medical improvement.

Dr. Paul Phillips, Jr., analyzed Dr. Lanford's surgical recommendation through a utilization review on September 29, 2015. Dr. Phillips found the requested anterior cervical fusion at C4-6 was not medically necessary and appropriate as the records did not include significant findings of recent electrodiagnostic studies confirming negative cervical radiculopathy. Dr. Phillips

indicated that the surgery was not pre-certified because Turner had not undergone selective nerve root blocks.

Dr. Berkman, a neurosurgeon, also saw Turner at the request of the carrier. Dr. Berkman stated that the February 16, 2015, work-related injury caused a right shoulder injury, cervical sprain, and exasperation of pre-existing cervical spondylosis with a right C5 radiculopathy. Dr. Berkman recommended epidural steroid injections at the C4-5 on the right and additional physical therapy for the cervical spine problems.

Turner's workers' compensation carrier ultimately denied the proposed cervical fusion, at which time there was a lapse in treatment. By July 6, 2016, however, Turner obtained private insurance coverage and began treating with Dr. John Yezerski for his shoulder and neck. Dr. Yezerski diagnosed a right rotator cuff tear and adhesive capsulitis of the right shoulder. Dr. Yezerski initially treated the condition conservatively with injections, but those measures failed and, on August 1, 2016, Dr. Yezerski performed a total shoulder replacement, which returned Turner to a functional range of motion and increased his strength. Dr. Yezerski opined that following the surgery Turner had a 14% impairment to the body as a whole. Dr. Yezerski provided Turner with a number of restrictions, including prohibiting him from reaching overhead with his right arm. Since Turner had to climb ladders to perform his maintenance job at the penitentiary, this

precluded Turner from returning to the type of work he was performing at the time of his injury. Dr. Yezerski indicated that Turner reached maximum medical improvement on September 13, 2017.

After the shoulder surgery, Turner again sought treatment for his neck pain. Because his insurance would not permit a return to Dr. Lanford, Turner visited Dr. Thomas Gruber on November 8, 2016, for neck pain and numbness. Dr. Gruber first saw Turner on November 8, 2016, at which time he noted that Turner's issues were complicated insomuch as the cervical spine problems and right shoulder problems made it hard to differentiate the cause of pain. An MRI revealed degenerative disc disease with right foraminal stenosis at the C4-5 and C5-6 levels along with disc herniation at both levels. Dr. Gruber agreed with Dr. Lanford that a two-level fusion surgery was the appropriate treatment, which he performed on February 6, 2017. Turner's cervical condition improved following the fusion, and Dr. Gruber recommended trigger point injections to improve stiffness in Turner's neck. Following a July 11, 2017, visit, Dr. Gruber concluded Turner had reached maximum medical improvement for his neck condition and could return to work. In an August 15, 2017, report, Dr. Gruber indicated that Turner's work injury exacerbated the pre-existing dormant, non-disabling degenerative conditions in Turner's cervical spine and concluded Turner had no active impairment rating prior to the injury. He assigned Turner a 25% impairment

rating and gave him several restrictions regarding lifting loads over twenty pounds and turning his head.

On August 12, 2015, Dr. Gregory Gleis performed an IME. According to Dr. Gleis, a May 12, 2015 cervical spine x-ray and a June 25, 2015 cervical MRI revealed pre-existing degenerative changes. Dr. Gleis believed that while Turner's left shoulder condition was consistent with pain from the cervical spine and his initial right shoulder symptoms were consistent with an AC joint separation, Turner's symptoms were now suggestive of referred cervical pain. From Turner's examination and medical records, Dr. Gleis found sufficient correlation between the neck and right arm symptoms to conclude that the head contusion from the February 16, 2015 incident could have caused Turner's neck injury. He determined that Turner was not yet at maximum medical improvement for the cervical spine.

On April 3, 2018, Dr. Thomas O'Brien also conducted an IME. He diagnosed minor bruises/contusions to the shoulder, ribs, and hip as a result of the work incident. Dr. O'Brien concluded Turner did not sustain a permanent injury in the fall; rather, Turner's rib and hip contusions resolved a few days after the incident and his shoulder pain improved. Dr. O'Brien, who did not review Turner's physical therapy records, emphasized that Turner did not complain of neck pain until almost two months after the work accident and relied upon his

interpretation of the June 23, 2015 MRI scan of Turner's cervical spine. Dr.

O'Brien concluded:

> Mr. Turner has a non-work-related, multilevel, cervical degenerative disc disease. The work activities of February 16, 2015, did not cause an injury to the cervical spine nor cause any type of temporary or permanent aggravation, acceleration or precipitation of this degenerative cervical condition above and beyond the natural history of progression of this condition in a middle-aged man. The two-month hiatus where there are no symptoms of neck pain or cervical radiculopathy effectively rules out a causal association with Mr. Turner's neck symptoms and the ultimate surgical procedure that was carried out by Dr. Gruber in the form of a C4-C5, C5-C6 anterior cervical decompression and fusion procedure on February 6, 2017. Further support for my causation opinion comes from the objective imaging studies including the cervical MRI scan. The cervical MRI scan dated June 23, 2015 depicts longstanding, mild, degenerative disc changes at C4-C5 and C5-C6 with no acute objective findings that can in any way be causally associated with an acute injury to the cervical spine resulting from the work incident of February 16, 2015.

Record ("R.") at 322. Dr. O'Brien assessed a 0% impairment for the neck and

opined Turner could have returned to unrestricted work by May 12, 2015.

Turner filed a Form 101 on November 11, 2018, seeking both

temporary and permanent wage and medical benefits for his work-related injuries.

In his Form 101, Turner alleged he sustained multiple injuries to multiple body

parts when he slipped and fell at work on February 16, 2015. Following a final

hearing, at which Turner testified, the ALJ rendered his decision on July 23, 2018.

-9-

The ALJ relied heavily upon Dr. O'Brien's opinions and determined that Turner sustained only temporary injuries to the shoulder, ribs, and hip due to his work accident. The ALJ awarded Turner temporary benefits from the date of the accident until May 12, 2015, when he determined Turner had reached maximum medical improvement. Turner appealed to the Board.

On January 11, 2019, the Board issued an opinion vacating the ALJ's opinion and remanding the claim to the ALJ for a review of the evidence with particular regard to Dr. O'Brien's opinion. The Board acknowledged that Dr. O'Brien's opinion on causation was based in part on a partially incomplete medical history insomuch as it did not contain Turner's physical therapy records. The Board directed the ALJ to review Dr. O'Brien's opinion in the context of those records and provide additional findings related thereto.

On March 18, 2019, the ALJ issued his first decision on remand, again finding that Turner had sustained only temporary injuries. Despite the Board's directions on remand, the ALJ did not reference the physical therapy records or explain whether he considered how Dr. O'Brien's failure to review those as part of his IME might affect the reliability of Dr. O'Brien's final opinion.

Turner appealed, and on August 2, 2019, the Board rendered its second opinion vacating and remanding the ALJ's judgment. Although the Board had directed the ALJ to provide a summary of the Trigg County records, the ALJ

had failed to include the fact that Turner was experiencing cervical spine pain at his appointments and did not reference the March 24 and 31 physical therapy records in his summary. The Board noted that the ALJ's only reference to the physical therapy records was: "[w]hile there was some reference to neck symptoms made at a physical therapy visit on March 24, 2015, as well as a complaint to a nurse on April 6, 2015, the point made by Dr. O'Brien regarding the late onset of symptoms is still persuasive." R. at 1056. On remand, the Board refused to direct the ALJ to issue an opinion without considering Dr. O'Brien's medical opinions altogether as Turner requested; instead, it directed the ALJ to address all the records before him as they pertained to Turner's cervical condition and to explain that Dr. O'Brien did not review Turner's physical therapy records in the course of his evaluation.

On October 22, 2019, the ALJ rendered his second opinion on remand. The ALJ addressed the Trigg County physical therapy records briefly, mentioning that Turner was seen on April 13, 2015, and referenced notes of shoulder impingement, cervical complaints, apparent range of motion measurements, and a possible Spurling's test. However, the ALJ ultimately found these records to be "illegible" and therefore of little evidentiary value. The ALJ again failed to discuss the March 2015 physical therapy records and reiterated his reliance upon Dr. O'Brien's opinions without accounting for the fact that Dr.

O'Brien rendered his opinion without the benefit of having reviewed all the physical therapy records. The ALJ also noted the objective findings supporting Dr. O'Brien's opinions, including his review of the June 23, 2015 MRI.

Turner again appealed to the Board, arguing that the ALJ had once again failed to explain how he could rely on Dr. O'Brien's conclusion with respect to the cervical injury when it appeared that opinion incorrectly relied on the fact that Turner had not complained of cervical pain to any of his providers in the immediate aftermath of his fall. On February 7, 2020, the Board once again vacated and remanded the ALJ's judgment. The Board wrote:

> We note the ALJ has had multiple opportunities to provide an accurate review of the evidence but has failed to do so. In his latest decision, the ALJ only made a passing statement that the records from the Trigg County Hospital Rehabilitation Department are "illegible," and did not reference the physical therapy records. We must therefore, again vacate the ALJ's determinations, and remand for a complete review of the records, and those from the Trigg County Hospital Rehabilitation Department. The ALJ must then discuss the impact of the information contained in those records upon Dr. O'Brien's opinion. *After reviewing the evidence and the impact, the ALJ may make any determination supported by the evidence. We do not direct any particular result; however, any decision must be based upon an accurate review of the evidence and its impact.*

R. at 1146 (emphasis added).

This time, Turner did not wait for the ALJ to render another opinion. Instead, Turner petitioned our Court for review of the Board's opinion. Before us,

-12-

Turner argues the Board abused its discretion insomuch as it should have (1) held that Dr. O'Brien's opinion cannot constitute substantial evidence supporting the ALJ's opinion; and (2) remanded the claim to the ALJ for new findings and conclusions in conformity with that holding.

## II.   STANDARD OF REVIEW

Pursuant to KRS[1] 342.285, the ALJ is the sole finder of fact in workers' compensation claims.  Accordingly, the ALJ has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence and to draw reasonable inferences from that evidence.  *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974).  "Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof."  *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009) (citing *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977)).

On review, neither the Board nor the appellate court can substitute its judgment for that of the ALJ as to the weight of evidence on questions of fact. *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky. App.

---

[1] Kentucky Revised Statutes.

1982). "In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion." *Bowerman*, 297 S.W.3d at 866. Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *Carnes v. Tremco Mfg. Co.*, 30 S.W.3d 172, 176 (Ky. 2000).

It falls to the Board to decide whether the ALJ's finding "is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000); KRS 342.285. "When reviewing the Board's decision, we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

### III.  ANALYSIS

As a primary matter, the Department of Corrections urges us to dismiss this appeal as improperly taken from an interlocutory order. It points out that the Board remanded the claim for additional analysis but did not dictate any particular result, meaning the claim is not yet fully resolved. This same issue was

addressed by the Kentucky Supreme Court in *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230 (Ky. 2016). In *Hampton*, the Court was presented with the question of whether the Board's opinion vacating an award and remanding for additional proceedings was final for purposes of appeal even though the Board did not specifically order or authorize the ALJ to reach a different result on remand. *Id.* at 234. The Court ultimately held that a Board opinion is final where it sets aside a prior award or determination of consequence and authorizes or requires the entry of a different award on remand. *Id*. This is precisely what the Board's opinion did in this case. Therefore, we have jurisdiction to review the Board's opinion. "[L]ike any other issue in a workers' compensation proceeding, the appellate courts may review the Board's decision to remand to the ALJ for error, taking into consideration, however, the Board's wide discretion to do so." *Tryon Trucking, Inc. v. Medlin*, 586 S.W.3d 233, 238 (Ky. 2019).

Having determined that we have jurisdiction, we turn to the merits of the petition. Turner argues that the Board erred in remanding his claim to the ALJ without an explicit directive for the ALJ to reassess the evidence without consideration or reliance on Dr. O'Brien's opinion. To this end, Turner argues Dr. O'Brien's opinion is based on an inaccurate and incomplete history and therefore cannot constitute substantial evidence pursuant to *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839 (Ky. 2004).

-15-

We begin with the ALJ's explanation of his reliance upon Dr. O'Brien's report. The ALJ stated as follows in his opinion:

18. The ALJ finds that the report of Dr. O'Brien in this matter is the most comprehensive, thorough, and persuasive. Dr. O'Brien was also most familiar with the Plaintiffs [sic] medical history as demonstrated in his report. Dr. O'Brien diagnosed minor bruises and contusions to the shoulder, ribs, and hip as a result of his work incident but concluded that the Plaintiff did not sustain a permanent injury in the fall.

19. Dr. O'Brien opined that the Plaintiff's rib and hip contusions resolved a few days after the incident and that his shoulder pain improved. He also pointed out that the Plaintiff didn't complain of neck pain until almost two months after the incident and concluded that the Plaintiff had non-work-related, multi-level, cervical degenerative disc disease and that the work injury of February 16, 2015, did not cause an injury to the cervical spine.

20. Dr. [O'Brien] convincingly stated that the Plaintiffs [sic] neck surgery was not related to the work injury and pointed out that the cervical MRI dated June 23, 2015, revealed longstanding, mild, degenerative disc changes at C4-5 and C5-6 with no objective findings showing work-relatedness.

21. Dr. [O'Brien] also convincingly opined that the surgery performed by Dr. Yezerski on September 1, 2016, had no causal relationship to the healed minor right shoulder bruise that the Plaintiff sustained on February 16, 2015. He convincingly stated that had the work injury had [sic] caused the tear, he would have had an immediate onset of severe pain. Dr. O'Brien added that when the Plaintiff was seen in the emergency room, he did not have clinical findings of an acute and chronic rotator cuff tear and that Dr. Chang's findings after the work injury supported a minor shoulder contusion and

-16-

not a traumatic rotator cuff tear or aggravation of a pre-existing rotator cuff, degenerative tear or impingement. Dr. O'Brien concluded therefore that the Plaintiffs [sic] shoulder surgery by Dr. Yezerski and cervical surgery by Dr. Gruber were not related to the work injury of February 16, 2015.

22. Finally, Dr. O'Brien assessed a 0% impairment for the neck and shoulder and found that the Plaintiff could return to work unrestricted after the work incident by May 12, 2015. He also said that the Plaintiff needed no further medical treatment and was at [maximum medical improvement] as of May 12, 2015. While Dr. O'Brien found that the Plaintiff needed no restrictions due to the work injury. [sic] The opinions of Dr. O'Brien have convinced the ALJ and the ALJ thus finds that the Plaintiff sustained only temporary injuries that resolved as of May 12, 2015.

R. at 869-71.

The Board agreed with Turner that Dr. O'Brien's report was based upon a flawed history – Dr. O'Brien did not review any of Turner's physical therapy records from March and April of 2015. However, the Board did not agree with Turner that the ALJ erred in refusing to discount Dr. O'Brien's report wholesale.

Turner repeatedly states that "[t]he Supreme Court [of Kentucky] has specifically and unequivocally stated that when a doctor's opinion is based on an inaccurate or incomplete medical history, that doctor's opinion cannot constitute substantial evidence." Appellant's Br. at 20. This is a misstatement of the law. Instead, our Supreme Court has held that "[w]hen a physician's opinion is based on

a history that is '*substantially inaccurate or largely incomplete*,' that opinion cannot constitute substantial evidence." *Eddie's Service Center v. Thomas*, 503 S.W.3d 881, 887 (Ky. 2016) (quoting *Cepero*, 132 S.W.3d at 842) (emphasis added).

In *Cepero*, an ALJ awarded a claimant benefits for an alleged work-related knee injury based upon evidence from two doctors who indicated that his knee condition was related to a work injury. However, neither doctor had been informed that Cepero had suffered a severe knee injury several years prior. 132 S.W.3d at 842. The Board reversed the ALJ's finding that the doctors' opinions were based upon substantial evidence and therefore sufficient to support findings of causation. The Supreme Court of Kentucky affirmed, quoting the Board's holding:

> [I]n cases such as this, where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being *substantially inaccurate or largely incomplete*, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence. Medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable.

*Id.* (emphasis added).

In *Eddie's Service Center*, the Supreme Court of Kentucky applied *Cepero* to hold that an ALJ has the discretion to reject a medical report based on a

-18-

substantially inaccurate understanding of the facts and medical history. 503 S.W.3d at 887-89. Our Supreme Court held that because of a number of internal consistencies within the report, along with the doctor's inaccurate understanding of the facts, the report could not constitute substantial evidence. *Id*. at 889. "Evidence is substantial if it is of 'relevant consequence having the fitness to induce conviction in the minds of reasonable men.'" *Id*. at 887 (quoting *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971)).

Finally, this Court held in *GSI Commerce* that an ALJ was not required to disregard a medical report that was "not 'unsupported by other credible evidence.'" 409 S.W.3d at 365. In that case, an employer contended that a physician's report could not be considered because it did not mention a prior relevant injury; however, the doctor explained during deposition that he was aware of the claimant's past injury. *Id*. We differentiated between *GSI Commerce* and *Cepero*, stating "[i]n *Cepero*, there was a **complete omission** of a significant and clearly relevant past injury [and] the medical opinion described in *Cepero* was completely unsupported by any other credible evidence." *Id*. at 364 (emphasis in original). Conversely, in *GSI Commerce*, the physician making the report was aware of the prior injury and there was other evidence before the court corroborating the physician's opinion. *Id*. at 365.

We are not convinced that the facts before us are analogous to those of *Cepero* or *Eddie's Service Center*. Rather, we are persuaded that the facts before us most closely resemble those of *GSI Commerce*. Turner accurately points out that Dr. O'Brien did not have the opportunity to review his full medical history, while the other doctors did. However, Dr. O'Brien did not arrive at his medical determination solely on the basis of the partially flawed medical history before him. Dr. O'Brien's premise for concluding that Turner's injuries were not causally related to his work injury was not entirely based upon his somewhat incomplete medical history – it was also based upon his interpretation of objective medical data: Turner's June 23, 2016 MRI. Dr. O'Brien opined that the MRI "depicts longstanding, mild, degenerative disc changes at C4-C5 and C5-C6 with no acute objective findings that can in any way be causally associated with an acute injury to the cervical spine resulting from the work incident of February 16, 2015." R. at 322.

Additionally, we note that Dr. O'Brien states in his report that he based his opinion, at least partially, on the lack of reference to any neck pain for two months. Two months is approximately eight weeks. Turner fell on February 16, 2015. The first mention of neck pain in the physical therapy records is around March 24, 2015, a period of five weeks and one day, less than two months but greater than one month. It is entirely possible the ALJ could have determined that

the physical therapy records would not have totally contradicted Dr. O'Brien's statements insomuch as Turner did not report neck pain to any medical provider in the days, weeks, or even first month following his fall. Turner also testified that his neck pain was not immediate, beginning a few weeks after his fall.

Based on our review of the records, we agree with the Board. Dr. O'Brien's opinion, although based in part on an incomplete review of all the medical records, is not so "substantially inaccurate or largely incomplete" that it could not be considered substantial evidence by the ALJ. *See Cepero*, 132 S.W.3d at 842. As such, we cannot disagree with the Board's decision refusing to direct the ALJ to reconsider the award without consideration of or reliance on Dr. O'Brien's opinion.

In this circumstance, evaluating the credibility and proper weight of Dr. O'Brien's report falls on the ALJ. *Paramount Foods, Inc.*, 695 S.W.2d at 419. The ALJ may determine whom and what to believe when there is conflicting evidence. *Pruitt v. Bugg Brothers*, 547 S.W.2d 123, 124 (Ky. 1977). The Board is charged with making sure the ALJ's opinion is based on an accurate understanding of the facts and evidence. To date, the ALJ's opinions have not demonstrated a sufficient understanding of the record to allow the Board to confidently conclude that the ALJ considered the scope of the issues before deciding that Dr. O'Brien's report was the most credible and reliable report before him. The Board cannot

affirm the ALJ unless his determinations are based upon an accurate review of the evidence and its impact. The ALJ must provide a sufficient basis for his determination as the Board has directed. *Kentland Elkhorn Coal Corp. v. Yates*, 743 S.W.2d 47, 49 (Ky. App. 1988).

In other words, as the Board instructed, on remand, the ALJ must provide additional analysis. We *urge* the ALJ to follow the Board's directives with as much precision as possible as these litigants deserve finality. We suggest the ALJ separately discuss each of the following in as much detail as possible to provide the assurances the Board requires with respect to the record: (1) provide a summary and analysis of the March and April records at issue highlighting any complaints or references to cervical/neck pain or treatment; (2) summarize and explain his understanding of Dr. O'Brien's opinions regarding Turner's neck injury and the rationale underpinning those opinions, if any; (3) provide some explanation of whether Dr. O'Brien's failure to review the records at issue affected the ALJ's assessment of the credibility and reliability of Dr. O'Brien's report, and the explanation for such determination; and (4) in light of any such determination explain how the ALJ considered Dr. O'Brien's opinion in comparison to the other opinions of record. If the ALJ does so, the Board must then accept the ALJ's ultimate findings so long as they are legally sufficient, as the Board has plainly

-22-

determined that Dr. O'Brien's opinion is capable of serving as substantial evidence if supporting analysis is provided by the ALJ.

## IV.   CONCLUSION

In light of the foregoing, we AFFIRM the decision of the Workers' Compensation Board remanding this matter for additional analysis by the ALJ.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jeffery Roberts
Murray, Kentucky

BRIEF FOR APPELLEE:

Lee Jones
Pikeville, Kentucky

Sara May
Pikeville, Kentucky