RENDERED: NOVEMBER 13, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0699-WC

BLUEGRASS OAKWOOD, INC.                                      APPELLANT

v.          PETITION FOR REVIEW OF A DECISION
         OF THE WORKERS' COMPENSATION BOARD
      CLAIM NOS. WC-16-78248, WC-17-64748, WC-18-00506,
            WC-18-00510, AND WC-18-00511

ROBIN STUBBS; HONORABLE
GRANT ROARK, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; JONES AND LAMBERT, JUDGES.

JONES, JUDGE: Bluegrass Oakwood, Inc., has petitioned this Court for review of

the decision of the Workers' Compensation Board (the Board), which affirmed in

part and remanded the decision of the Administrative Law Judge (ALJ) awarding

benefits to Robin Stubbs. At issue is whether Stubbs had any pre-existing active impairment. Having reviewed the record in conjunction with all applicable legal authority, we affirm.

## I. BACKGROUND

Stubbs was born in 1960. She began working as a rehabilitation counselor for Bluegrass Oakwood in 2006. Bluegrass Oakwood serves intellectually and developmentally challenged individuals. During the course of her employment, Stubbs sustained several injuries for which she filed workers' compensation claims. She alleged an injury on June 16, 2016, to her neck, left arm, left shoulder, and back during a physical altercation with a patient. (Claim No. 2016-78248). Her second injury date was May 2, 2017, when she was struck on the left shoulder and left arm while she and other staff members were changing a patient (Claim No. 2017-64748). Stubbs's third injury date was July 11, 2017, when a patient she was transporting fell off a sidewalk and pulled her off with her, causing Stubbs to injure her left shoulder, arm, and elbow (Claim No. 2018-00506). Her fourth injury date was September 18, 2017, when she injured her left shoulder and back when lifting a client onto a bicycle (Claim No. 2018-00510). Her fifth injury date was October 13, 2016, when she was struck in the face by a resident (Claim No. 2018-00511). The five claims were all filed in March 2018 and were later consolidated for all purposes. Bluegrass Oakwood denied her

claims for various reasons, including the amount of compensation she was owed, how the injury arose, and notice. Stubbs last worked for Bluegrass Oakwood in September 2017.

Medical proof was filed, and the ALJ held a Benefit Review Conference (BRC) in August 2018. At that time, contested issues included whether Stubbs had any pre-existing disability or impairment, as well as causation. A final hearing was held in September 2018, after which the parties filed briefs supporting their respective positions.

The ALJ entered an opinion, order, and award on November 16, 2018. The ALJ summarized the evidence from (1) Stubbs's deposition; (2) the medical reports/records of her treating physician Dr. Jeffrey Golden; (3) Dr. John Vaughan's independent medical examination (IME) report; (4) Dr. Michael Best's IME report; (5) Dr. Ellen Ballard's IME report; (6) Dr. Stephen Autry's IME report; (7) records from Dr. Travis Hunt and Dr. Wallace Huff, who saw Stubbs in 2017 for evaluation of her cervical spine complaints; (8) records from Dr. Ronald Dubin, who treated Stubbs following a motor vehicle accident in January 2012; and (9) records from Dr. Magdy El-Kalliny, who treated Stubbs for cervical spine complaints in 2012. The ALJ did not summarize or mention records from Dr. Bryan Nelson, a chiropractor who treated Stubbs from 2001 through 2015 for neck pain, thoracic spine/left shoulder pain, and low-back pain following a motor

vehicle accident in August 2001 and a second motor vehicle accident in January 2012.

The ALJ first analyzed the issue of causation, concluding that Stubbs's cervical and shoulder injuries were work-related and compensable (but that she failed to establish that she had suffered a permanent lumbar injury):

> As threshold issues, [Bluegrass Oakwood] maintains that, despite [Stubbs's] multiple alleged dates of injury, [Stubbs has not suffered] any new, permanent injuries to her neck, back or left shoulder beyond those problems which were pre-existing and active prior to any of the injuries alleged herein. It therefore argues [Stubbs] has no compensable permanent injuries and is not entitled to permanent income benefits or payment of medical expenses. In support of this position, [Bluegrass Oakwood] relies on opinions from its experts, Dr. Ballard, Dr. Vaughan, and Dr. Best, each of them concluded [Stubbs's] cervical problems were pre-existing prior to her alleged work injuries and that none of the work incidents caused any structural change. They also concluded [Stubbs] suffered no lumbar injury. For her part, [Stubbs] relies on her expert, Dr. Autry, who acknowledged [Stubbs's] prior cervical treatment from a 2012 motor vehicle accident, but concluded she had neck, back, and left shoulder injuries due to the work injuries she described.
>
> Having reviewed the evidence of record, the Administrative Law Judge is plainly aware of the fact that [Stubbs] had prior cervical and lumbar complaints, and even some left shoulder complaints, prior to any of the work injuries alleged herein. But the question is whether any portion of her current cervical, left shoulder, or lumbar issues are new and caused by any of the work injuries alleged. Ultimately, the ALJ is persuaded [Stubbs] has suffered some new cervical and left

shoulder injuries as a result of the June 15, 2016 work injury. Despite prior treatment and even a 2012 motor vehicle accident, [Stubbs] was always able to return to work and perform the full duties associated with her position. After June 15, 2016, her neck and left arm/shoulder conditions never significantly abated. All physicians agree [Stubbs] has significant cervical degenerative disc disease but the ALJ is persuaded by Dr. Autry's opinion that [Stubbs's] work injury caused a permanent aggravation of her cervical spondylosis and accompanying radiculopathy. His opinion is simply found more persuasive and more in keeping with [Stubbs's] ability to continue working and performing the full range of her duties before she was struck by a resident at work on June 15, 2016. It is therefore determined [Stubbs's] cervical condition is work-related and compensable.

Similarly, the ALJ is persuaded by Dr. Autry's opinion that [Stubbs] has rotator cuff tendinosis and impingement as a result of her work injury. In reaching this conclusion, it is noted that Dr. Huff, to whom [Stubbs] was referred by the insurance carrier, indicated [Stubbs's] diagnostic testing and examination indicated cervical impingement after her work injury with persistent weakness in the left upper extremity hyperreflexia. His findings seem to support Dr. Autry. Conversely, the defendant's experts offer contradictory conclusions which undermine their collective credibility. For example, Dr. Vaughan indicated [that while Stubbs] had genuine pain into her left upper extremity, he believed it was referred pain from her cervical condition and not due to any shoulder injury. However, Dr. Best indicated [Stubbs's] shoulder complaints were due to a left rotator cuff tear diagnosed in 2012 after [a] motor vehicle accident and that [Stubbs] suffered only shoulder and neck contusions in the work incidents, which resolved without any permanency. In addition, Dr. Ballard's initial report indicates she never even examined [Stubbs's] neck, yet she still concluded in a subsequent

report, after reviewing additional records, that [Stubbs] only had pre-existing cervical and bilateral shoulder problems. Based on Dr. Autry's more persuasive opinion in this instance, it is determined [Stubbs] also suffered a compensable shoulder injury.

The ALJ went on to decide that Stubbs had sustained a permanent, partial disability and relied on Dr. Autry's impairment ratings to conclude that she had a 12% whole person impairment (an 8% cervical impairment and a 4% left shoulder impairment). As to whether Stubbs had any active impairment, the ALJ concluded:

> [Bluegrass Oakwood] maintains at least 5% of [Stubbs's] cervical impairment rating should be carved out [as] pre-existing and active based on the opinions of its experts and [Stubbs's] treatment records. However, although [Stubbs] previously receive[d] significant treatment for cervical complaints, the ALJ is not persuaded her condition was significantly symptomatic and disabling immediately prior to June, 2016. The fact that she was able to perform the full range of duties of her job supports this conclusion. As such, the ALJ is persuaded by Dr. Autry's opinion that no portion of [Stubbs's] cervical impairment rating was pre-existing and active.

Both parties petitioned the ALJ for reconsideration on matters unrelated to this appeal, which the ALJ granted and corrected. Bluegrass Oakwood appealed the ALJ's decision to the Board.

In an opinion rendered April 5, 2019, the Board affirmed the ALJ's opinion in part. The Board set out Bluegrass Oakwood's arguments related to the ALJ's interpretation of *Finley v. DBM Technologies*, 217 S.W.3d 261 (Ky. App.

2007), related to proof for a pre-existing condition; whether it is a question for medical experts to decide whether a condition is symptomatic; whether the IME report Stubbs submitted constituted substantial evidence; and whether the ALJ's finding regarding Stubbs's condition being asymptomatic was arbitrary and capricious. The Board rejected Bluegrass Oakwood's arguments, noting that the ALJ, as the fact-finder, had the discretion to determine that Dr. Autry's opinions were credible and to rely upon those opinions. However, the Board determined that the ALJ only addressed the June 15, 2016, injury, not the four later injury claims. Therefore, it remanded the matter for the ALJ to decide those claims. This petition for review now follows.

Our review in this matter is premised on the Supreme Court of Kentucky's statement describing this Court's role in reviewing workers' compensation actions. In *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685 (Ky. 1992), the Supreme Court directed that this Court's function is to correct a decision of the Board only where we perceive that "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id*. at 687-88.

The Supreme Court later addressed this standard in *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001), explaining:

KRS[1] 342.285(2) provides that when reviewing the decision of an ALJ, the Board shall not reweigh the evidence and substitute its judgment for that of the ALJ with regard to a question of fact. The standard of review with regard to a judicial appeal of an administrative decision is limited to determining whether the decision was erroneous as a matter of law. *See American Beauty Homes v. Louisville & Jefferson County Planning & Zoning Commission*, Ky., 379 S.W.2d 450, 457 (1964). Where the ALJ determines that a worker has satisfied his burden of proof with regard to a question of fact, the issue on appeal is whether substantial evidence supported the determination. *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Co.*, Ky., 474 S.W.2d 367 (1971). Although a party may note evidence which would have supported a different conclusion than that which the ALJ reached, such evidence is not an adequate basis for reversal on appeal. *McCloud v. Beth-Elkhorn Corp.*, Ky., 514 S.W.2d 46 (1974). The crux of the inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law. *Special Fund v. Francis*, *supra*, at 643.

In addition, the ALJ has the authority to decide the assessment of the credibility of witnesses and the persuasive weight of the evidence. KRS 342.285. The ALJ, not the Board, is empowered "to determine the quality, character and substance of evidence." *American Greetings Corp. v. Bunch*, 331 S.W.3d 600, 602 (Ky. 2010) (footnote omitted). The ALJ is also free to reject testimony, *id.*, and

---

[1] Kentucky Revised Statutes.

"to believe part of the evidence and disbelieve other parts of the evidence[.]" *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). For these reasons, the Board "shall not substitute its judgment for that of the administrative law judge as to the weight of evidence on questions of fact." KRS 342.285(2); *see also FEI Installation, Inc. v. Williams*, 214 S.W.3d 313, 316 (Ky. 2007). And "if the physicians in a case genuinely express medically sound, but differing, opinions as to the severity of a claimant's injury, the ALJ has the discretion to choose which physician's opinion to believe." *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 153 (Ky. App. 2006).

Bluegrass Oakwood urges us to examine *Finley* in light of the facts of this case. It further asserts that the ALJ's criteria in finding that Stubbs's condition was asymptomatic—namely the mere fact that she was still working—is arbitrary and capricious. Finally, Bluegrass Oakwood argues that it submitted no fewer than 244 pages of treatment notes from Stubbs's chiropractor chronicling treatment to Stubbs's cervical spine as early as October 2001 and as recently as December 11, 2015, a mere twenty-seven weeks prior to the first date of injury.

In *Finley*, we held that "a pre-existing condition that is *both* asymptomatic and produces no impairment prior to the work-related injury constitutes a pre-existing dormant condition." *Finley*, 217 S.W.3d at 265. "[T]he burden of proving the existence of a pre-existing condition falls upon the

employer." *Comair, Inc. v. Helton*, 270 S.W.3d 909, 914 (Ky. App. 2008) (quoting *Finley*, 217 S.W.3d at 265). Bluegrass Oakwood argues that the IME reports it submitted in combination with Stubbs's chiropractic records conclusively establish that she suffered from a pre-existing, active, and impairment-ratable condition. The ALJ disagreed. In so doing, the ALJ relied on Dr. Autry's opinion that no portion of Stubbs's cervical impairment rating was pre-existing and active. The ALJ noted that he found Dr. Autry's opinion on this issue more persuasive because it was consistent with the fact that Stubbs was able to perform the full range of duties prior to June 2016. Despite Bluegrass Oakwood's arguments to the contrary, the ALJ's reliance on Stubbs's ability to continue working without restrictions was an appropriate consideration in assessing the persuasiveness of the differing medical opinions presented to him. *See Holcim v. Swinford*, 581 S.W.3d 37, 41 (Ky. 2019) (applying *Finley* and affirming that condition was not preexisting where ALJ "considered the fact that [the claimant] had been working full time without any restriction as a heavy equipment operator for more than two decades after his cervical fusion surgery").

Additionally, we cannot agree with Bluegrass Oakwood that the ALJ should have outright rejected Dr. Autry's report as unreliable. In *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839 (Ky. 2004), an ALJ awarded a claimant benefits for an alleged work-related knee injury based upon evidence from two

-10-

doctors who indicated that his knee condition was related to a work injury.

However, neither doctor had been informed that Cepero had suffered a severe knee

injury several years prior. *Id*. at 842. The Board reversed the ALJ's finding that

the doctors' opinions were based upon substantial evidence and therefore sufficient

to support findings of causation. The Supreme Court of Kentucky affirmed,

quoting the Board's holding:

> [I]n cases such as this, where it is irrefutable that a
> physician's history regarding work-related causation is
> corrupt due to it being *substantially inaccurate or largely
> incomplete*, any opinion generated by that physician on
> the issue of causation cannot constitute substantial
> evidence. Medical opinion predicated upon such
> erroneous or deficient information that is completely
> unsupported by any other credible evidence can never, in
> our view, be reasonably probable.

*Id.* (emphasis added).

In *Eddie's Service Center v. Thomas*, 503 S.W.3d 881 (Ky. 2016), the

Supreme Court of Kentucky applied *Cepero* to hold that an ALJ has the discretion

to reject a medical report based on a substantially inaccurate understanding of the

facts and medical history. *Id*. at 887-89. Our Supreme Court held that because of

a number of internal inconsistencies within the report, along with the doctor's

inaccurate understanding of the facts, the report could not constitute substantial

evidence. *Id*. at 889. "Evidence is substantial if it is of 'relevant consequence

having the fitness to induce conviction in the minds of reasonable men.'" *Id*. at

-11-

887 (quoting *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971)).

Finally, this Court held in *GSI Commerce v. Thompson*, 409 S.W.3d 361 (Ky. App. 2012), that an ALJ was not required to disregard a medical report that was "not 'unsupported by other credible evidence.'" *Id*. at 365. In that case, an employer contended that a physician's report could not be considered because it did not mention a prior relevant injury; however, the doctor explained during deposition that he was aware of the claimant's past injury. *Id*. We differentiated between *GSI Commerce* and *Cepero*, stating "[i]n *Cepero*, there was a **complete omission** of a significant and clearly relevant past injury [and] the medical opinion described in *Cepero* was completely unsupported by any other credible evidence." *Id*. at 364 (emphasis in original). Conversely, in *GSI Commerce*, the physician making the report was aware of the prior injury and there was other evidence before the court corroborating the physician's opinion. *Id*. at 365.

We cannot agree with Bluegrass Oakwood that the ALJ's reliance on Dr. Autry's opinion was improper in this circumstance. Dr. Autry was aware of Stubbs's prior injuries and had the opportunity to examine Stubbs as well as review prior records. We cannot conclude that Dr. Autry's IME was so corrupt as to make it incapable of being substantial evidence.

Finally, Bluegrass Oakwood points out that the ALJ paid little attention to the many chiropractic records it submitted. It is undisputed that Stubbs received this treatment. The ALJ acknowledged in his opinion that Stubbs had prior injuries and received treatment for those injuries. Moreover, the ALJ summarized the medical opinions/reports the parties submitted in this case. Those opinions considered Stubbs's prior complaints and treatment making it unnecessary for the ALJ to separately summarize the chiropractic treatment records.

Moreover, the chiropractic records would only substantiate what the ALJ had clearly accepted—Stubbs had prior injuries that caused her pain and she received treatment for those injuries in the years leading up to the work injury at issue. The determinative question is whether Stubbs was suffering from a pre-existing, active, impairment-ratable condition at the time of her work injury. *Finley*, 217 S.W.3d at 265 ("To be characterized as active, an underlying pre-existing condition must be symptomatic and impairment ratable pursuant to the AMA Guidelines immediately prior to the occurrence of the work-related injury."). The chiropractic records would not fully answer that question because a chiropractor lacks the expertise to assign an impairment rating. *See* AMA Guides 5th ed., Sec. 2.2. ("Impairment evaluations are performed by a licensed physician. The physician may use information from other sources . . . [h]owever, the

physician is responsible for performing a medical evaluation that addresses medical impairment in the body or organ system and related systems.").

In this circumstance, evaluating the credibility and proper weight of Dr. Autry's report fell on the ALJ. The ALJ may determine whom and what to believe when there is conflicting evidence. *Pruitt v. Bugg Brothers*, 547 S.W.2d 123, 124 (Ky. 1977). The Board is charged with making sure the ALJ's opinion is based on an accurate understanding of the facts and evidence and a proper application of the law. It did not err in this instance in affirming the ALJ's decision with respect to the June 15, 2016, injury. Moreover, we agree with the Board's decision to remand for consideration of the other injury claims Stubbs alleged, which were omitted from the ALJ's opinion.

For the foregoing reasons, the opinion of the Workers' Compensation Board is affirmed.

CLAYTON, CHIEF JUDGE, CONCURS.

LAMBERT, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEF FOR APPELLANT:

Robert F. Ferreri
Lexington, Kentucky

BRIEF FOR APPELLEE ROBIN STUBBS:

McKinnley Morgan
London, Kentucky